IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| OSCAR L. JOHNNY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-CV-04008-FJG |
| | ) | |
| LARRY BORNOWSKI, et al., | ) | Div. 15 |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE ALL TESTIMONY FROM DEFENSE EXPERT DR. BAIN AND SUGGESTIONS IN SUPPORT

Plaintiff respectfully requests this Court to exclude all testimony from defense expert Dr. Bain. This Motion is made pursuant to Federal Rules of Evidence 403, 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In support of this Motion, Plaintiff states:

I.  **Introduction**

On January 26, 2007, Plaintiff Oscar Johnny, Jr. was stopped in his vehicle on the grass shoulder of Highway 69 completely off the roadway. Defendant Larry Bornowski lost control of his tractor-trailer and left the roadway and slammed into Plaintiff's vehicle at a dangerous rate of speed. As a result, Plaintiff sustained severe and permanent back injuries and other injuries and has been rendered partially disabled.

Under this Court scheduling order, Defendants' expert designations were due June 27, 2011. On July 19, 2011, Defendants designated Charles Bain, B.Eng., M.D., C.C.F.P. (biomechanics and injury causation). Dr. Bain opines that: the discectomy surgery performed by Plaintiff's treating doctor was a "sham procedure"; the collision force caused Plaintiff's tractor-

1

trailer to experience a change in velocity of 3 mph; the force generated between the two tractor-trailers was likely not sufficient to actually move Plaintiff's tractor-trailer; the force experienced by Plaintiff would have caused little to no extension or flexion of his neck; the amount of force caused Plaintiff to experience head movements equivalent to that of sneezing or coughing; there is a threshold level of injury in vehicular accidents; and Plaintiff sustained no back injuries because he did not seek treatment for two or three weeks after the accident.

In addition to being untimely, Dr. Bain's opinions are not supported by sufficient facts, are contrary to the facts of the case, rely on scientific studies that involved substantially dissimilar circumstances, and are not generally accepted in the relevant scientific community. Dr. Bain's opinions are unscientific and unreliable and, therefore, should be excluded under Rule 702 and *Daubert*.

Further, because Dr. Bain's opinions were disclosed after Plaintiff's expert rebuttal deadline expired, Plaintiff will be significantly prejudiced if Defendants are allowed to present expert testimony from a biomechanical engineer with no opportunity to rebut such testimony. All testimony from Dr. Bain must also be excluded under Rule 403.

## II. <u>Applicable Law</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and it requires that district courts "ensure that all scientific testimony is both reliable and relevant." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-758 (8th Cir. 2006) (*citing Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

2

principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 592.

The inquiry as to the reliability and relevance of the testimony designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Marmo*, 457 F.3d at 757-758 (*citing Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Id.* (*citing Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000)).

The proponent of expert testimony has the burden to show by a preponderance of the evidence that the expert is qualified to render the opinion and that the methodology underlying the expert's conclusions is scientifically valid. *Id.* (citing *Daubert*, 509 U.S. at 589-90). "[A] key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593 (noting that scientific theory, by definition, is subject to "falsibility, refutability, or testability.").

"Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication." *Id.* at 593. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Id.* "The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration

3

in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Id.* at 594.

"[I]n the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation." *Id.* (internal citations omitted). Additionally, the court should consider whether the expert's proposed opinions are generally accepted within the relevant scientific community. *Id.* "Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community' may properly be viewed with skepticism." *Id.* (*citing United States v. Downing*, 753 F.2d 1224, 1238 (3rd Cir. 1985)).

Although the district court's focus should be on the principles and methodology of an expert's opinions, and not on the conclusions, the U.S. Supreme Court has recognized that "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A district court should not admit opinion evidence that "is connected to existing data only by the *ipse dixit* of the expert." *Id.* When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded. *Id.*

Expert testimony that satisfies Rule 702 may nevertheless be excluded under Rule 403. *See Daubert*, 509 U.S. 595 (because expert evidence can be powerful and misleading, a district court should be mindful to weigh possible prejudice against probative force under Rule 403). Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4

Fed. R. Evid. 403.

Finally, an expert's opinion may be excluded for failure to comply with Federal Rule of Civil Procedure 26 and/or the court's scheduling order regarding timing of expert disclosures. *See e.g., Brooks v. Union Pacific R. Co.*, 620 F.3d 896, 899-901 (8th Cir. 2010) (district court properly excluded expert's testimony due to proponent's failure to make Rule 26 expert disclosures within the time set forth in the court's scheduling order).

## III. Argument

### A. Defendants' disclosure of Dr. Bain was untimely

On June 27, 2011, Defendants designated four experts: Robert Reed (trucking standard of care expert); Bruno Schmidt, Ph.D (accident reconstruction); David K. Ebelke, M.D. (orthopedic doctor); and Andrew S. Pavlovich, M.D. (ear, nose, and throat specialist). That same day, Defendants also filed a motion [Doc. 49] asking for permission to name additional experts and/or to file supplemental expert reports after receiving the raw data generated by Plaintiff's expert Paul Deutsch, Ph.D. Specifically, in their motion, Defendants claim that "[t]he present request is limited to designating additional experts and/or supplementing current affidavits/reports *with respect to Deutsch's raw data and his opinions after it has been analyzed and reviewed.*" (Doc. 49, p. 3) (emphasis added).

Plaintiff did not file an opposition to Defendants' motion on the belief that any additional experts designated by Defendants would actually be limited to reviewing Deutsch's raw data as stated in Defendants' motion. Defendants' received Deutsch's raw data on July 5, 2011.

On July 19, 2011, Defendants designated two more experts: Patrick D. Caffrey, Ph.D (rehab psychologist and neuropsychologist) and Charles Bain, B.Eng., M.D., C.C.F.P.

(biomechanics and injury causation). Plaintiff did not receive these additional expert reports from Defendants until July 20, 2011—*i.e.*, nine days after Plaintiff's expert rebuttal deadline.

Dr. Bain opinions are not limited to analyzing and reviewing Deutsch's raw data as stated promised in Defendants' motion to name additional experts [Doc. 49]. In fact, Dr. Bain's expert report indicates that he did not even review Deutsch's data—let alone analyze it in his report.

On July 29, 2011, this Court granted Defendants' motion to name additional experts, but ruled that "the additional experts and/or affidavits are limited to an analysis or review of the raw data received from Plaintiff's expert, Paul Deutsch."[1] (ECF/CM Doc. 69, p. 1). Because Dr. Bain's expert report neither reviewed nor analyzed Deutsch's raw data, and because Dr. Bain was not otherwise disclosed timely, all testimony from Dr. Bain must be excluded.

### B. Dr. Bain's opinions do not satisfy Federal Rule of Evidence 702 and *Daubert*

Even if Dr. Bain had been timely disclosed, Dr. Bain's opinions should nevertheless be excluded as unscientific and/or unreliable under Rule 702 and *Daubert*. Dr. Bain's opinions are not supported by sufficient facts, are contrary to the facts of the case, rely on scientific studies that involved substantially dissimilar circumstances, and are not generally accepted in the relevant scientific community.

#### 1. Dr. Bain's opinions are not supported by sufficient facts and/or are contrary to the facts of this case

Dr. Bain's expert report is foundationally problematic for numerous reasons. In his report, Dr. Bain calculates the change in velocity experienced by Plaintiff's trailer-tractor at the time of the collision to be an acceleration of 3 mph. To get there, Dr. Bain relies on a treating physician's recorded recollection of Plaintiff's speculation as to the speed of Defendant

---

[1] Plaintiff's counsel pointed out this language to defense counsel and asked if defense counsel would voluntarily withdraw Dr. Bain as an expert in lieu of forcing Plaintiff to draft this motion, but defense counsel never responded. (*See* Email, **Exhibit A**).

6

Bornowski's tractor-trailer—*i.e.*, 30 mph—instead of Defendant Bornowski's testimony that he was travelling at 55-60 mph. (Depo. of Larry Bornowski, p. 36: 18-25; 37: 1-25, **Exhibit B**). Dr. Bain made no effort to explain why he selected the 30 mph figure over Defendant Bornowski's testimony that he was actually travelling 55-60 mph.

Dr. Bain then combines the 30 mph figure with a police officer's report that Plaintiff's tractor-trailer moved 10 feet as a result of the collision, and concludes that the change in velocity experienced by Plaintiff's trailer-tractor at the time of the collision was therefore 3 mph. Right after making this calculation (which was dependent upon the 10 foot measurement by police officers), Dr. Bain concludes that Plaintiff's tractor-trailer likely did not move at all as a result of the collision because it was stuck in the mud and there was not enough force generated in the collision to move Plaintiff's tractor-trailer out of the mud. Even worse, Dr. Bain never even attempted to calculate the actual amount of force generated in this collision but simply attributed a calculation of peak acceleration force of 2g as coming from Dr. Schmidt—a calculation that Plaintiff's counsel was unable to find anywhere in Dr. Schmidt's report. At best, Dr. Schmidt mentioned *typical average* accelerations in other accidents and/or speculated as to *typical average* accelerations that might be expected in this collision, but at no point did Dr. Schmidt attempt to calculate the *actual peak* acceleration for this collision. Dr. Schmidt did not even measure, discuss, or consider the actual speed of Defendant Bornowski's tractor-trailer or the actual lengths of the two tractor-trailers at issue.

After undermining his own 3 mph calculation (by rejecting the police officer's report that Plaintiff's truck moved 10 feet) and borrowing a peak acceleration calculation from Dr. Schmidt that Dr. Schmidt never actually calculated, Dr. Bain then uses these figures to conclude that the accelerations and forces experienced by Plaintiff were not enough to cause any human injury.

7

Specifically, Dr. Bain cites 5 mph accelerations (or 4.5g peak accelerations) as the threshold acceleration for injury in rear-end collisions and argues that Plaintiff could not have sustained any injury because this accident only resulted in 3 mph accelerations (or 2g peak accelerations).

From there, Dr. Bain uses his collision force calculations to estimate the head accelerations that Plaintiff would have experienced in the cabin of his tractor-trailer. Dr. Bain, however, did not perform any tests, measurements, calculations, or other analyses of how force would have been distributed from the rear of Plaintiff's tractor-trailer into the cabin. Dr. Bain did not test or inspect the mechanism by which the trailer was connected to the tractor and did not consider whether such mechanism altered, increased, or deflected that distribution of force between the trailer and tractor. In short, Dr. Bain simply assumes that Plaintiff experienced the same amount, type, and direction of force that would have been experienced by any driver in a rear-end collision regardless of the type, weight, size, structure, and/or length of the vehicles involved. Rule 702 and *Daubert*, however, require more reliability than just unsupported speculation.

Not only does Dr. Bain lack a proper foundation for his opinions and conclusions regarding the change in acceleration and peak acceleration forces in this collision (both vehicle accelerations and head accelerations), Dr. Bain also failed to consider several important facts in the record. Dr. Bain's conclusion that there was not enough force to move Plaintiff's tractor-trailer at all is contrary to the police report that Plaintiff's tractor-trailer—weighing 42,000 pounds—in fact moved 10 feet as a result of this collision even though it was stuck in mud and unable to move on its own. Despite these facts, Dr. Bain concludes that this collision resulted in the same amount of force as that generated by a sneeze or a cough. Although Plaintiff's counsel has witnessed some enormous coughs and sneezes by various people in public, Plaintiff's

8

counsel has a hard time believing that any person's sneeze or cough could move a 42,000-pound tractor-trailer 10 feet—regardless of whether it was stuck in the mud.

All of these facts were contained in Dr. Bain's report, yet Dr. Bain did not measure, test, or analyze how such gravitational forces and/or counter-forces affect calculations of acceleration and/or how to interpret such calculations in the context of this collision. Dr. Bain's testimony must be excluded as lacking a proper foundation and/or as being contrary to the facts of this case.

      2.     <u>Dr. Bain's opinions rely on scientific studies that involved substantially dissimilar circumstances</u>

Relying on his unsupported calculations of vehicle and head accelerations, Dr. Bain cites several studies that attempt to measure the amount of force needed to cause head, neck, and/or back injuries in rear-end collisions. Dr. Bain's opinions cannot be reliably based on such studies, however, because the vehicles involved in such studies were drastically different than the tractor-trailers (and thus, distributions of force) involved in this collision. (*See, e.g.,* "Analysis of Human Test Subject Kinematic Responses to Low Velocity Rear End Impacts," **Exhibit C**) ("Four test vehicles, a 1986 Dodge 600 convertible, a 1984 Buick Regal Limited Coupe, a 1984 Ford Club Wagon van, and a 1984 GMC 1500 pickup truck were prepared for the test protocol"). Dr. Bain is unable to establish (and has no foundation to establish) that the vehicles used in the studies he cites are sufficiently similar so as to reliably equate the results of such studies to collisions involving tractor-trailers. Dr. Bain's testimony must be excluded as scientifically unreliable.

      3.     <u>Dr. Bain's opinions are not generally accepted in the relevant scientific community</u>

Dr. Bain states that it is generally accepted that a threshold for injury for rear-end collisions is a change in velocity of 5 mph (or 4.5g peak acceleration). Such a conclusion is far

9

from generally accepted. (*See e.g.*, "Injury Threshold: Whiplash-associated disorders," **Exhibit D**) ("There is not one specific injury mechanism or threshold of injury . . . such threshold designation is not possible."); (*see also* "Rear-end impacts: vehicle and occupant response," **Exhibit E**) ("There does not seem to be an absolute speed or amount of damage a vehicle sustains for a person to experience injury . . . The diagnoses of the occupant injuries relies on standard orthopedic neurological testing . . . ."). Dr. Bain's conclusion that there is such a threshold is not generally accepted and should be excluded as unreliable.

### C. Dr. Bain's testimony should be excluded under Rule 403 as unfairly prejudicial

Even if Dr. Bain's testimony satisfied Rule 702 and *Daubert* standards, which is denied, Dr. Bain's testimony should nevertheless be excluded under Rule 403. *See Daubert*, 509 U.S. 595 (because expert evidence can be powerful and misleading, a district court should be mindful to weigh possible prejudice against probative force under Rule 403). Because Dr. Bain's opinions were disclosed after Plaintiff's expert rebuttal deadline expired, Plaintiff will be significantly prejudiced if Defendants are allowed to present expert testimony from a biomechanical engineer with no opportunity to rebut such testimony.

### IV. Conclusion

For the reasons above, Plaintiff's motion *in limine* to exclude all testimony from Dr. Bain should be granted. Plaintiff has not yet been allowed to depose Dr. Bain and reserves and requests the right to supplement this motion in the event that Dr. Bain is deposed. Plaintiff's motion to depose Defendants' experts is still pending.

WHEREFORE, Plaintiff respectfully requests this Court to exclude all testimony from Dr. Bain.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


/s/      Ari N. Rodopoulos
DANIEL A. THOMAS                MO #52030
ARI N. RODOPOULOS               MO #58777
JONATHAN M. SOPER               MO # 61204
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816) 836-5050    (816) 836-8966 FAX

ATTORNEYS FOR Plaintiffs


## CERTIFICATE OF SERVICE

A copy of the foregoing was served via electronic mail and U.S. Mail on this 1st day of August, 2011, to:

Michael D. Matteuzzi
Matthew J. Brooker
WALDECK, MATTEUZZI & SLOAN
11181 Overbrook Road, Suite 200
Leawood, KS 66221
913-253-2500
913-253-2501 fax

Attorneys for Defendants


/s/      Ari N. Rodopoulos

11