IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OSCAR L. JOHNNY, JR., | ) |
| Plaintiff, | ) No. 10-04008 -CV-FJG |
| vs. | ) |
| LARRY BORNOWSKI and STAMPEDE CARRIERS, LLC, et al., | ) |
| Defendants. | ) |

# ORDER

Currently pending before the Court is Defendants Larry Bornowski ("Bornowski") and Stampede Carriers, L.L.C.'s ("Stampede") (collectively "Defendants") Motions to Strike Testimony and Opinions of Plaintiff's Retained Expert Witness Paul Deutsch (Doc. No. 72) and John Ward (Doc. 71).

## I. Background

This is an action arising out of injuries sustained by Plaintiff Oscar Johnny when a tractor trailer, driven by Defendant Bornowski, collided with Plaintiff's 18-wheeler in January 2008. Plaintiff's complaint asserts negligence, negligence per se, and aggravating circumstances warranting punitive damages.

Plaintiff seeks to admit the expert opinion of psychologist and rehabilitation expert, Paul Deutsch, Ph.D., and forensic economist, John Ward, Ph.D.. Deutsch's expert opinion evaluates Plaintiff's need for psychological treatment, future medical treatment, work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time (Doc. No. 87 Exhibit 1). Ward's expert opinion forecasts the monetary loss sustained by Plaintiff based on Deutsch's evaluations (Doc. No. 35). Defendant objects to Plaintiff's use of each expert in its present Motions to Strike Testimony and Opinions of Plaintiff's Retained Expert Witness Paul Deutsch (Doc. No. 72) and John Ward (Doc. No. 71).

## II.     Standard of Review

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court interpreted the requirements of Federal Rule of Evidence 702 as it related to expert testimony. In United States v. Vesey, 338 F.3d 913, 916-17 (8th Cir. 2003), cert. denied, 540 U.S. 1202 (2004), the Court stated:

> Rule 702 requires the trial judge to act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is granted broad discretion in its determination of reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The gatekeeper role should not, however, invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence, see Arkwright Mut. Ins. Co. V. Gwinner Oil Co., 125 F.3d 1176, 1183 (8th Cir. 1997). Expert testimony should be admitted if [1] it is based on sufficient facts, [2] it " is the product of reliable principles and methods," and [3] "the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also General Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

Vesey, 338 F.3d at 916-17.

The testimony of a rehabilitation expert is not admissible if it projects how a person's injuries may shorten his or her work life without sufficient underlying medical support. Hartness v. Union Pacific R. Co., 2008 WL 5429638, 2-4 (E.D. Ark.).  While the expert may rely on medical reports in forming his opinions of Plaintiff's employability, he may not testify as a medical expert. Id. at 2.  Where there is insufficient medical support for the rehabilitation expert's testimony, an economist who bases their economic loss calculations on this testimony, must adjust accordingly.  Id. at 4.

## III.     Analysis

Plaintiff's psychologist and rehabilitation expert, Paul Deutsch, Ph.D., evaluated Plaintiff's need for psychological treatment, future medical treatment, work restrictions, diminished work life, and probability Plaintiff will return to work full time

or part time. Deutsch opines that based on the medical records obtained from Plaintiff's treating and retained medical doctors, established literature in the field, and Deutsch's own psychological interview and testing of Plaintiff, the following medical treatment is necessary for Plaintiff's recovery:

 a. Physical therapy 1X a year to develop home exercise program (Evaluation $250-$300) (Exhibit B, Deutsch Appendix A, p. 3)

 b. Physical therapy to improve symptoms from presumed post-surgical change at L5-S1 with bulging annulus and mild foramen/epidural fibrosis and bulging annulus at L4-L5 (18-24 sessions – avg. session $240 – $1,920 to $5,760) (Exhibit B, Deutsch Appendix A, p. 3-4)

 c. Chronic pain management program after all aggressive medical treatment has concluded (3 week inpatient - $45,000 to $62,000 OR 4 week outpatient program $45,000 plus evaluation at $1,500 to $2,500) (Exhibit B, Deutsch Appendix A, p. 4)

 d. Medications: Hydrocodone 5/500, 4/day, $28/month; Flector patches 1.3%, 4/day, $733/mo. (Exhibit B, Deutsch Appendix A, p. 4)

 e. Medical care (routine): orthopedic evaluation ($125 to $300 per year); pain management specialist ($250 for initial consult then $116-$150 follow up 3-4 times a year); Otolaryngologist to monitor hearing ($150-$180 per year); case management services ($3,528-$5,880 for first 6 months then $1,764 for next six months) (Exhibit B, Deutsch Appendix A, p. 4)

 f. Medical care (aggressive): lumbar epidural spine injection - $4,300; if injection not successful then microdiscectomy at L5-S1 (physician fee $6,777-$9,506; anesthesia $890-$1,070; facility fees $41,249); attendant care post back surgery $3,816-$4,240 (Exhibit B, Deutsch Appendix A, p. 4-5)

 g. Membership in wellness program to allow exercise $468 per year (Exhibit B, Deutsch Appendix A, p. 5)

Deutsch relies on Plaintiff's successful completion of each of the aforementioned medical treatments in his evaluation of Plaintiff's work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time (Doc. No. 87 Exhibit 1 p. 27-30). Deutsch asserts that each recommendation has sufficient underlying medical support (Doc. No. 87). As such, Plaintiff submits that not only should Deutsch be permitted to testify, but

expert testimony from Plaintiff's second expert, forensic economist John Ward,

Ph.D., properly relies upon Deutsch's opinions in calculating damages and thus, Ward's testimony should also be permitted (Doc. No. 87).

Defendants request the Court exclude Deutsch's testimony of future medical treatments, work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time. Deutsch is a psychologist, not a medical doctor. As such, Defendants assert he is not qualified to provide expert testimony concerning any need for Plaintiff's future medical care. Deutsch, at no point, physically evaluated Plaintiff. Deutsch merely performed a psychological interview. Underlying medical support is required and the medical doctors in this case did not approve of Deutsch's future medical treatment recommendations. Furthermore, Deutsch's opinions about work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time are improper as they are highly speculative. (Doc. No. 72).

Given that Plaintiff's second expert, economist John Ward, Ph.D., relied on Deutsch's report in forecasting the cost of future medical treatment, work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time. Defendants believe Ward's testimony in these areas should be excluded. (Doc. No. 71).

After carefully reviewing the arguments of both parties and the report of Plaintiff's expert, the Court finds Dr. Paul Deutsch's testimony is inadmissible as it relates to future medical treatments, work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time. Deutsch's expert testimony is only admissible as it relates to psychological treatment. This includes psychological evaluations, individual counseling options, and career guidance counseling. To the extent that Dr. John Ward's economic forecast relies on Dr. Paul Deutsch's testimony as to future medical treatments, work restrictions, diminished work life, and probability Plaintiff will return to work full time or part time, Dr. Ward's testimony is also inadmissible.

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motions to Strike Testimony and Opinions of Plaintiff's Retained Expert Witness Paul Deutsch (Doc. No. 72) and John Ward (Doc. 71) are **GRANTED**.

Date: <u>November 10, 2011</u>　　　　　　　　　**S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge